# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1912 | **DATE** | 9/11/2000 |
| **CASE TITLE** | CAROLYN BOTTOMS vs. ILLINOIS DEPARTMENT OF HUMAN SERVICES, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss [17-1] is granted in part and denied in part. Defendants Illinois Department of Human Services and Chicago-Read Medical Center shall answer the surviving claims under VII by September 26, 2000. Defendants Marilyn Targos and James Brunner are dismissed from this action. Bottoms' motion for leave to file an amended complaint is denied without prejudice. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 13 2000 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | JS docketing deputy initials | 23 |
| | Copy to judge/magistrate judge. | | |
| SB courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 SEP 12 PM 6: 44 Date/time received in central Clerk's Office | 9/11/2000 date mailed notice jad mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CAROLYN BOTTOMS, )
) 
Plaintiff, ) No. 00 C 1912
)
v. ) Suzanne B. Conlon, Judge
)
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES, et al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Carolyn Bottoms sues the Illinois Department of Human Services ("Human Services"), the Chicago-Read Mental Health Center ("Chicago-Read"), Marilyn Targos (individually and in her official capacity), and James Brunner (individually and in his official capacity) (collectively "defendants") pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, under the theories of race discrimination, due process violations, equal protection clause violations, and First Amendment violations. Defendants move to dismiss some of Bottoms' claims for lack of subject matter pursuant to Fed. R. Civ. P. 12(b)(2), for failure to state a cause of action upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and to request that this court abstain from considering all of Bottoms' constitutional claims until state administrative action is concluded.



## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). The following statement of facts is taken from the complaint. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Bottoms has been an employee of Human Services since 1991. Most recently, Bottoms was employed as an office assistant at Chicago-Read. On March 4, 1998, Bottoms discovered that Chicago-Read was improperly retaining personnel file documents that were to be expunged by a prior Equal Employment Opportunity Commission ("EEOC") settlement agreement. Bottoms attempted to have these documents expunged from her personnel file.

Bottoms claims she was subjected to discrimination and retaliation after the attempt to have the EEOC documents expunged. In March 1998, Bottoms was denied flextime work scheduling to care for her ailing mother, while a similarly situated white employee was granted flextime. On June 19, 1998, Bottoms filed a charge of discrimination with the EEOC.

On October 1, 1998, Bottoms returned from leave under the Family and Medical Leave Act ("FMLA"), and was forced to use her accrued leave benefits or go without pay during her leave. Upon her return, she was reassigned to the supervision of Brunner and Targos. The physical conditions of Bottoms' new assignment were detrimental to her health. Defendants were aware of these conditions, which resulted in an Illinois Department of Labor citation to Chicago-Read. Chicago-Read had provided a similarly situated male an air purification device. Despite this, and despite the citation, Chicago-Read took over four months to provide Bottoms with an air purification device.

On February 4, 1999, Bottoms received in the interoffice mail an offensive document containing racial epithets and slurs. On March 19, 1999, without provocation or justification, Targos hit Bottoms with a locker door. Defendants took no corrective action against Targos and denied Bottoms' request to have her union representative present during employer-scheduled supervision sessions by Targos.

On April 1, 1999, Bottoms was disciplined for an unauthorized absence, but there were no grounds for this decision. On April 29, 1999, Bottoms applied for a promotion to a posted office associate position. Despite meeting all qualifications and being the only applicant when bids closed on April 30, 1999, Bottoms was not awarded the position. Chicago-Read did not respond to Bottoms' written inquiries about the situation.

On May 7, 1999, Targos filed an incident report with Chicago-Read alleging that Bottoms physically threatened her. The report was allegedly false. Chicago-Read and Brunner knew the report was false and refused to correct the matter. On May 11, 1999, Bottoms was placed on paid administrative leave without notice. Bottoms was ordered to attend an evaluation to determine her mental fitness to return to work.

Bottoms alleges that she was discharged without justification, that Human Services and Chicago-Read converted her administrative leave to disciplinary suspension without notice, that her alleged conduct did not justify discharge, that defendants did not answer letters protesting their actions, and that she was deprived of copies of her personnel file and other documents, as well as the opportunity to present an adequate defense.

Bottoms filed a charge of discrimination with the EEOC on June 14, 1999 and received a right-to-sue letter on December 30, 1999.

Bottoms is proceeding *pro se*, and her complaint is predicated on claims that she was deprived of a property interest in violation of the due process clause of the Fourteenth Amendment; that she was deprived of her right to petition the government in violation of the First and Fourteenth Amendments; that defendants discriminated against her in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act; and that she was discharged in violation of due process and the equal protection clauses of the Fourteenth Amendment. Bottoms requests declaratory judgment, injunctive relief, compensatory and punitive damages.

## DISCUSSION

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Zimmerman v. Burch, 494 U.S. 113, 118 (1990). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." Colfax Corp. v. Ill. State Highway Auth., 79 F.3d 631, 632 (7th Cir. 1996).

The court has an obligation to ensure that *pro se* plaintiffs are given fair and meaningful consideration. Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1183 (7th Cir. 1989). *Pro se* complaints are not held to the stringent standards expected of pleadings drafted by lawyers. Wilson v. Civ. Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir. 1998).

### I. The Eleventh Amendment

Defendants argue that Bottoms' §1981 and § 1983 claims are barred by the Eleventh Amendment. Eleventh Amendment issues may arise whenever a private party files a federal lawsuit

4

against a state, a state agency, or a state official. The effect of the Eleventh Amendment may differ, however, depending on the defendant's category. Bottoms sues two state agencies, Human Services and Chicago-Read. A state agency is treated the same as if the state itself is sued. Kroll v. Board of Trustees of the Univ. of Ill., 934 F.2d 904, 907 (7th Cir. 1991).

Bottoms argues that the Eleventh Amendment only bars suits seeking monetary damages, not injunctive relief. Pl. Resp., p. 1-2 (citing Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 102-03 (1984)). This argument applies when an *individual* state official is sued, not a state agency, as in this case. State agencies are immune from suit, subject to two exceptions not applicable in this case, "regardless of the nature of relief sought." Kroll, 934 F.2d at 907. Because Human Services and Chicago-Read are state agencies, they may not be sued under § 1981 and § 1983. Bottoms' claims for injunctive and monetary relief against Human Services and Chicago-Read must be dismissed.

## II. Abstention

Bottoms has appealed her discharge from Chicago-Read to the Illinois Civil Service Commission. DHS v. Bottoms, DA 47-00. The Civil Service Commission conducted a four-day evidentiary hearing on her discharge. Bottoms' charge before the Civil Service Commission is still pending.

Bottoms brings constitutional claims under the First and Fourteenth Amendments. Defendants argue that this court should abstain from hearing these claims under Ohio Civ. Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619 (1986). A federal court should abstain from hearing a case when an administrative proceeding is pending where important state interests are at stake, provided the plaintiff will have a full and fair opportunity to litigate her constitutional claim. Id. at 627.

5

Bottoms does not dispute that this case falls within the requirements of Dayton Christian. Rather, she contends issue preclusion. The doctrine of abstention is a distinct and quite different doctrine than issue preclusion, which Bottoms cites to in response to the defendants' abstention argument. Defendants are not arguing that Bottoms should be precluded from asserting her claims in federal court, only that this court should abstain from hearing these claims until they have been resolved in the state civil service proceeding.

Here, the requirements for abstention are met. First, the state has an important interest in determining the mental health of its employees and whether or not they pose a threat to others. This is particularly true in the setting of a mental hospital. Second, Bottoms does not dispute that she has had a full and fair opportunity to present her constitutional claims in the state civil service proceedings. Def. Resp. at 4. Further, Bottoms may seek review of the civil service commission's decision, if adverse, in the Circuit Court of Cook County and the Illinois appellate courts. Button v. Mardan, 814 F.2d 382, 384-85 (7th Cir. 1987); Edwards v. City of Quincy, 124 Ill.App.3d 1004, 1012 (Ill.App. 1984). As a matter of comity, this court shall not proceed with issues that have been or can be raised in the state civil service proceeding. See Younger v. Harris, 401 U.S. 37, 44 (1971).

### III. The Statute of Limitations

The applicable time limitations period for claims under § 1981 and § 1983 is Illinois' two-year statute of limitations for personal injury actions. Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996). Bottoms filed her complaint on March 29, 2000. Therefore, all claims prior to March 29, 1998 are time-barred. The complaint alleges that it was not until March 4, 1998 that Bottoms discovered Chicago-Read retained documents in her personnel file that were to be expunged by a prior EEOC settlement agreement between the Human Services and Bottoms. "Federal statutes of limitations begin

to run from the date on which the plaintiff discovered that he was injured (not when he discovers that he has a claim against the injurer - that would be contrary to United States v. Kubrick, 444 U.S. 111, 122 (1979))." Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1101 (7th Cir. 1992). Bottoms was put on notice that she may have suffered a legal wrong when she discovered the EEOC documents in her personnel file on March 4, 1998. The statute of limitations provides two years to diligently investigate and decide whether or not to file suit. Bottoms did not file suit regarding this claim until more than two years had passed. As a result, the claim based on documents in her personnel file is time-barred.

Defendants also argue that because the alleged denial of flex-time occurred at an unspecified date in March 1998, the claim is time-barred. Because no specific date has been provided, it is unclear whether this claim is time-barred. Dismissal is not appropriate unless it is apparent from the face of the complaint that no facts could entitle Bottoms to relief. Colfax Corp., 79 F.3d at 632.

### IV.  Title VII Claims Against Targos and Brunner

Defendants argue, and Bottoms concedes, that all Title VII claims against Targos and Brunner must be dismissed because they are not employers as defined under Title VII, 42 U.S.C. § 20003(b). The motion to dismiss all Title VII claims against Targos and Brunner will be granted.

### V.  The EEOC Charge

Defendants argue that Bottoms has raised claims in her complaint that were not included in her most recent EEOC charge, filed on June 14, 1999. Def. Br., Ex. B. Bottoms responds that the claims under consideration are reasonably related to the claims in her charge and, thus, defendants had reasonable notice of her present claims.

7

"A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." Conley v. Village of Bedford Park, 215 F.3d 703, 710 (7th Cir. May 31, 2000); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). Because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). In order to determine whether the allegations in Bottoms' complaint fall within the scope of her EEOC charge, this court looks at whether the allegations are "like or reasonably related to" those contained in the charge. Id. (citation omitted). "The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." Id. If the claims are reasonably related, this court then considers whether the current claims could have developed from the EEOC's investigation. Cheeks v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996).

In construing Bottoms' EEOC charge, it must be kept in mind that "EEOC charges are to be read broadly" and "a strict and technical application of the [Cheek] rule would subvert the liberal remedial purposes of the Act." Kristufek v. Hussmann Foodservice Co., 985 F.2d 364, 368 (7th Cir. 1993). Bottoms' charge alleges various discriminatory acts by Human Services and Chicago-Read on account of her race and in retaliation for her criticism of her employer's discriminatory practices and filing an EEOC charge. Though the charge describes some discriminatory acts by some people, it would subvert the purpose of the Cheek rule to assume that Bottoms specifically enumerated all discriminatory acts in her charge. The purpose of the rule is to give Human Services and Chicago-

8

Read notice of the claims in Bottoms' EEOC charge and afford the EEOC the opportunity to investigate those claims. Cheek, 31 F.3d at 502.

In her EEOC charge, filed June 14, 1999, Bottoms stated, "I have been subjected to constant harassment from both my new supervisor and the staff and received unjust discipline ... for alleged insubordination." In her complaint, Bottoms' alleges that: (1) she was denied flex-time scheduling; (2) that the physical conditions of her assignment were unhealthy and that defendants delayed in providing her with an air purification device; and (3) that she was denied promotion for an office associate position she applied for on April 29, 1999. Defendants argue that these claims were not raised in Bottoms' EEOC charge. While these claims were not specifically enumerated in Bottoms' EEOC charge, they are reasonably related to the allegations raised in the EEOC charge.

Bottoms alleges that Brunner, an employee of Chicago-Read and Human Services, denied her flex-time, while allowing a similarly situated white male flex-time. This claim is reasonably related to Bottoms' allegation that she was "subjected to harassment by her supervisor." Bottoms' claim that she was subjected to unhealthy working conditions and Brunner and Targos did not provide her with an air purification device, while a similarly situated male was provided with a device, is likewise encompassed by Bottoms' allegation of harassment by her supervisors. Finally, Bottoms' allegation that she was denied a promotion to office associate despite meeting all qualifications and being the only applicant is reasonably related to her claims of harassment and retaliation by Chicago-Read.

In addition, Bottoms claims that she was required to use her accrued leave benefits or go without pay while on a leave under the FMLA. While this may give rise to an FMLA claim, it may

9

also be a basis for a Title VII claim that is reasonably related to Bottoms' EEOC charge. The claim is that white employees were allowed to take leave under the FMLA, but Bottoms, a black employee, was not. This is a viable Title VII claim and is another part of the pattern of discrimination and retaliation alleged in the EEOC charge.

The EEOC charge filed on June 14, 1999, explicitly states that the latest date of discrimination took place on June 4, 1999. The EEOC did not have an opportunity to investigate Bottoms' claims that occurred after June 4, 1999. This is a condition precedent to Bottoms' filing these charges in this court. Cheek, 31 F.3d at 501. Therefore, all Bottoms' claims that occurred subsequent to the period designated in her EEOC charge must be dismissed without prejudice. This applies to Bottoms' claims that: (1) in the Fall of 1999 she was put on a disciplinary suspension without notice and in November 1999, she was discharged; (2) that she was deprived of relevant documents necessary to put on a defense to the allegations of her misconduct; (3) that the Center failed to timely provide her with a copy of her personnel file; and (4) that she was not provided with an opportunity to be heard before she was required to attend a fitness for duty evaluation.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. The Eleventh Amendment claims against Human Services and Chicago-Read, the claim for improperly retaining documents in Bottoms' personnel file, and the Title VII claims against Targos and Brunner are dismissed with prejudice. The allegations of disciplinary suspension without notice, improper discharge, deprivation of access to documents necessary to put on a proper to defense to allegations of misconduct, failure to provide a copy of a personnel file, failure to provide an opportunity to be

10

heard before being required to attend a fitness evaluation and all constitutional claims are dismissed without prejudice.

ENTER:

Suzanne B. Conlon
United States District Judge

September 11, 2000