Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1912 | **DATE** | 4/24/2001 |
| **CASE TITLE** | BOTTOMS vs. ILLINOIS DEPARTMENT OF HUMAN SERVICES, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] The motion for summary judgment [44-1] is granted. Judgment is entered for defendants Illinois Department of Human Services and Chicago-Read Mental Health Center and against plaintiff Carolyn Bottoms. ENTER MEMORANDUM OPINION AND ORDER. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 3 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/24/2001 | |
| | | | date mailed notice | |
| SB | courtroom deputy's initials | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAROLYN BOTTOMS, )
)
Plaintiff, ) No. 00 C 1912
)
v. ) Suzanne B. Conlon, Judge
)
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES and CHICAGO-READ MENTAL )
HEALTH CENTER, )
)
Defendants. )

DOCKETED
APR 3 0 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Bottoms ("Bottoms") sues the Illinois Department of Human Services ("Human Services") and Chicago-Read Mental Health Center ("Chicago-Read") (collectively "defendants") pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, alleging race discrimination and retaliation.[1] Defendants move for summary judgment.

## BACKGROUND

All facts are undisputed unless otherwise noted. Human Services is a state agency providing health services to persons with disabilities through various medical facilities. One facility is Chicago-Read, an in-patient mental health center. Starting in July 1996, Bottoms worked at Chicago-Read as an office assistant in the staff development department which handles employee training. In October 1997, Bottoms requested flex-time scheduling; Chicago-Read denied her request in November 1997.

---

[1] The §§ 1981 and 1983 claims, First and Fourteenth Amendment constitutional claims and individual defendants Marilyn Targos and James Brunner were previously dismissed.

Def. Ex. H at ¶ 10; Def. Ex. J at 19; Pl. Ex. A at 8. Bottoms, who is a union member, grieved this denial until March 1998, when the grievance was withdrawn.

The denial of flex-time caused Bottoms to take a six-month leave of absence in April 1998 to care for her mother under Human Services' Family Responsibility Leave ("family leave") program, which permits employees to miss work for family obligations. Unless an employee requests to use benefit time (*i.e.* sick, vacation, personal), she is not paid while on family leave. Def. Ex. E at ¶ 20; Def. Ex. H at ¶¶ 20-22. Bottoms did not request benefit time and received no pay. Id. at ¶ 21. She filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in June 1998.[2]

While on family leave, the staff development department found Bottoms' clerical support unnecessary, but the general stores department needed her help. Def. Ex. E at ¶ 21. Upon her return in October 1998, Chicago-Read transferred Bottoms to an office assistant position in general stores under the supervision of Marilyn Targos ("Targos"). General stores is in charge of purchasing all non-clinical supplies. Bottoms' duties in general stores did not differ significantly from those in the staff development department. No other office assistants were allowed to remain in staff development after Bottoms transferred; she did not grieve her transfer. Def. Ex. I at 44-46.

Soon after her arrival at general stores, Bottoms became insubordinate by refusing to speak to Targos, and refusing to perform essential duties such as answering the telephone, and delivering paperwork and time-sheets. Def. Ex. F at ¶ 7-8. Bottoms complained her assignments consisted of menial tasks and that she received no training in other general stores duties. Id. at ¶ 9. For these

---

[2] This June 1998 charge is only relevant to Bottoms' present suit as it relates to her claims for retaliation.

reasons, Targos scheduled weekly supervisory meetings. Id. at ¶¶ 10-11. Bottoms refused to participate and, as a result, received a written reprimand and suspension for insubordination in March and April 1999. Id. at ¶¶ 12,14,19, Ex. 13. These suspensions did not cause Bottoms to re-assess her conduct. In May 1999, Bottoms threatened to call the police if Targos ever tried to communicate with her again. Id. at ¶ 25, Ex. 16-17. Targos filed an incident report with Chicago-Read, but no discipline resulted. Def. Ex. I at 96-98,104.

In late April 1999, Bottoms applied for a promotion to office associate. As the sole person to bid, Bottoms claims the terms of the collective bargaining agreement required that she receive the position. Def. Ex. I at 87. Two weeks after her bid, Chicago-Read placed Bottoms on paid leave and ordered her to undergo a fitness-for-duty evaluation for, *inter alia*, striking and injuring a co-worker and refusing to speak or meet with Targos. Def. Ex. I at 105,107-108; Def. Ex. E at ¶ 35, Ex. 6-35. Bottoms does not dispute she engaged in this conduct, but still refused to attend the evaluation. Def. Ex. E at 31-32. As a result, Chicago-Read converted her leave to a twenty-five day suspension, and again referred her for a fitness-for-duty evaluation. Id. Because of her repeated refusal to submit to an evaluation, Human Services began discharge proceedings, which resulted in her termination in November 1999. Def. Ex. H at ¶ 27. Chicago-Read waited for the outcome of the discharge proceedings against Bottoms before deciding to fill the promotional position. Def. Ex. H at ¶ 28. Once the Illinois Civil Service Commission upheld her discharge, Chicago-Read filled the office associate position. Id. at ¶ 29.

Bottoms claims other acts of discrimination after Chicago-Read transferred her to general stores. Her work location was soiled with dirt and dust. She sought medical attention the day after she transferred and requested a clean air machine. Def. Ex. G at ¶ 7; Def. Ex. I at 126-27. Two

months later, she filed a complaint with the Illinois Department of Labor, which issued Chicago-Read a citation for unhealthy work environment. Chicago-Read complied with the citation by cleaning Bottoms' office. Def. Ex. E at ¶ 22; Def. Ex. H at ¶ 24. After the cleaning, Bottoms requested a clean air machine in April 1999 and received it the same day. Def. Ex. G at ¶¶ 9-10; Def. Ex. I at 127.

While attempting to meet with Bottoms in March 1999, Targos came to her office to discuss mail distribution. Bottoms refused to speak to Targos and told her not to place anything on her desk. Def. Ex. F at ¶ 20. While attempting to place documents for Bottoms on a chair, Targos moved a locker door that hit Bottoms, who threatened to call security and then called the police. Id.; Def. Ex. I at 58, 68-72. No officers interviewed Bottoms, and she did not file a complaint. Bottoms did not grieve the incident. Id. There is no evidence Targos intentionally hit Bottoms with the locker or that Bottoms was harmed.

Bottoms also alleges Chicago-Read discriminated against her by giving her an unauthorized absence in April 1999. She requested family leave for these days, but when completing the time sheets, Targos inadvertently entered vacation leave. Def. Ex. F at ¶ 23, Ex. 14. When brought to the attention of Chicago-Read's EEO officer, Bottoms' leave credits were restored. Id. at ¶ 24, Ex. 15.

In late April 1999, Bottoms alleges her desk was "trashed." Def. Ex. I at 99. According to Bottoms, her office looked "like a tornado hit it." Id. at 102. Human Services investigated this incident with inconclusive results. Id. at 102-103. The damage done to Bottoms' office included a tipped supply-holder with its contents (two bottles of white-out and a few paperclips) spilled and two misplaced books. Def. Ex. E, Schlitz report at 1-4.

In February 1999, Bottoms received by interoffice mail an offensive note containing racial epithets and slurs. Def. Ex. G at 8. She does not know who sent the note. Def. Ex. I at 49. Chicago-

Read investigated the note, advised Bottoms of her right to file discrimination charges and provided her with an internal discrimination complaint form. Def. Ex. G at ¶¶ 13-14,18. The investigation proved inconclusive and Chicago-Read distributed EEO statements to all employees. Id. Bottoms filed a charge with the EEOC on June 14, 1999.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); King v. National Human Res. Comm., Inc., 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. Bay v. Cassens Transp. Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000).

### II. Title VII Statute of Limitations

Under Title VII, Bottoms's right to sue in this court depends on timely filing an EEOC charge. 42 U.S.C. § 2000e-5(e)(1),(f)(1). To be timely, Bottoms must have filed her charge within 300 days of the alleged discrimination. Filipovic v. K & R Exp. Sys., Inc., 176 F.3d 390, 396 (7th Cir. 1999). The 300-day period began the date she knew or should have known with the exercise of reasonable

diligence of the alleged discrimination. *See* Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir. 1994); Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 281-82 (7th Cir. 1993).

Bottoms filed her EEOC charge on June 14, 1999. Thus, her Title VII claims can only be premised on events occurring within 300 days earlier, starting in August 1998. Her claims regarding denial of flex-time scheduling and use of family leave time are barred. Chicago-Read denied her request for flex-time scheduling in November 1997. She grieved this denial until March 1998, and argues the limitations period for her flex-time claim is tolled until this date. Grievance proceedings do not toll the 300-day period. International Union of Elec. Radio and Mach. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 236-237 (1976); Spaulding v. Blue Cross-Blue Shield of Ill., No. 99 C 5810, 1999 WL 968510, at *2 (N.D. Ill. Oct. 15, 1999). Even if tolled to March 1998, the denial of flex-time scheduling is still before the 300-day period, and thus barred. After Bottoms grieved the denial of her flex-time request, she went on family leave in April 1998. Because leave began well before the 300-day period, all claims concerning family leave are also barred.

### III. Disparate treatment under Title VII

To establish her claim for race discrimination under Title VII, Bottoms must offer either direct evidence of discriminatory intent or show disparate treatment through the indirect method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). *See* Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Bottoms offers no direct proof of discrimination, but attempts to meet her burden by showing discriminatory treatment under the McDonnell Douglas test.

To show disparate treatment using the indirect method, Bottoms must establish that she belongs to a protected class; she performed her job satisfactorily; she suffered an adverse job action; and Human Services treated similarly-situated non-African Americans more favorably. *See* Lenoir v.

Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994). Once she makes this showing, Human Services must articulate a legitimate, nondiscriminatory reason for its actions. Lenoir, 13 F.3d at 1133. Bottoms must then prove by a preponderance that Human Services' reason was a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Plair, 105 F.3d at 348. To do this, Bottoms must show that a reasonable fact finder could infer Human Services did not honestly believe the reason for its actions. *See* Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994). Human Services argues Bottoms cannot establish a *prima facie* case of disparate treatment because she did not perform her job satisfactorily; did not suffer an adverse job action; and has not shown that similarly situated non-African Americans were treated more favorably.

### A. Unsatisfactory job performance

An employee who is insubordinate does not perform her job satisfactorily. Kirk v. Federal Prop. Mgt. Corp., 22 F.3d 135, 139 (7th Cir. 1994); Ulmer v. Bob Watson Chevrolet, Inc., No. 97 C 7460, 1999 WL 1101332, at *4 (N.D. Ill. Nov. 29, 1999). Soon after Bottoms' arrival at the general stores department, she became insubordinate by stubbornly refusing to speak or meet with Targos, and by failing to perform essential job duties. Despite repeated discipline, Bottoms remained obstinate. As a direct result of insubordination and violence against a co-worker, Chicago-Read ordered her to undergo a fitness-for-duty examination. A physical attack upon a co-worker is an extremely serious offense, justifying a high degree of accountability. Filipovic, 176 F.3d at 394-95; Jackson v. Northeastern Ill. Univ., No. 99 C 6740, 2000 WL 1853331, at *3 (N.D. Ill. Dec. 18, 2000). It is undisputed Bottoms engaged in this conduct, and was uncooperative. An employer is entitled to inquire into the mental health of its employees where, as here, there are legitimate concerns about the employee and public safety. Davis-Durnil v. Village of Carpentersville, Ill., 128 F. Supp.2d 575, 580

(N.D. Ill. 2001). Human Services ultimately discharged Bottoms for insubordination. The evidence strongly suggests Bottoms was an uncooperative and insubordinate employee. Bottoms' has not shown she performed her job satisfactorily. Thus, she has not established a *prima facie* case for disparate treatment.

### B. Adverse job actions

Even if Bottoms established that she met Human Services' legitimate expectations, she does not state a cognizable action. The Seventh Circuit broadly defines an adverse job action, but not every action that makes an employee unhappy is actionable. Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996); Cullom v. Brown, 209 F.3d 1035, 1041 (7th Cir. 2000). An action must be materially adverse; it must be more than a mere inconvenience or an alteration of job responsibilities. Ribando v. United Airlines, Inc., 200 F.3d 507, 510-511 (7th Cir. 1999). Examples of materially adverse actions include termination, a demotion evidenced by a decrease in pay, a less distinguished title, a material loss of benefits or significantly diminished material responsibilities. Id. Human Services contends that Bottoms' transfer to general stores; the unhealthy office conditions of her work area; the racial note; the locker door accident with Targos; the unauthorized absence Bottoms received; and Bottoms' "trashed" office do not constitute adverse job actions.

### 1. Transfer to general stores

Bottoms argues that Chicago-Read discriminated against her by transferring her to general stores. As evidence, Bottoms argues denial of her flex-time request in staff development in November 1997 conflicts with Chicago-Read's reason for transferring her in October 1998 to general stores. Pl. Ex. A at ¶¶ 9-10,13. There is no conflict. Operational needs are subject to change. Almost a year passed between denial of Bottoms' flex-time request and her transfer to general stores. Bottoms offers

nothing else to show Chicago-Read transferred her for an invidious reason. She presents no evidence that her transfer constitutes a demotion; that she received a lesser title; that she lost any benefits or material responsibilities. The transfer's only negative is the unhealthy condition of her office. Chicago-Read cleaned the office and eventually provided her with a clean air machine. There is no evidence the delay was discriminatory. Bottoms' transfer does not constitute an adverse job action. *See* Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) (transfer with no "demotion in form or substance" not materially adverse); Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir. 1994) (same); Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) (same).

### 2. The racial note

After receiving a racial note, Chicago-Read promptly investigated and advised Bottoms of her discrimination rights. Although the investigation proved inconclusive, Chicago-Read distributed EEO statements to all employees. To constitute direct evidence of discrimination, this note must be contemporaneous with an adverse action or causally related to the decision-making process. *See* Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (quoting Geier v. Medtronic Inc., 99 F.3d 238, 242 (7th Cir. 1996)), *cert. denied*, 525 U.S. 870 (1998). Bottoms offers no evidence this note was causally or temporally related to any adverse action nor does she offer evidence a decision-maker prepared or authorized the note. Without more, the note was not an adverse action. *See* Walker v. Doctors Hosp. of Hyde Park, 110 F. Supp.2d 704, 711 (N.D. Ill. 2000) (occasional use of racial slurs or epitaphs do not in and of themselves support a claim of race discrimination); Fortenberry v. United Airlines, 28 F. Supp.2d 492, 496 (N.D. Ill. 1998) (same).

### 3. Other claimed adverse actions

After refusing to meet with Targos for a supervisory meeting, Bottoms demanded that Targos not place documents on her desk. To accommodate Bottoms, Targos attempted to place documents on a chair, and moved a locker door that accidently touched Bottoms. Bottoms presents no evidence this incident was motivated by discriminatory or retaliatory *animus*. She also alleges Chicago-Read discriminated against her by giving her an unauthorized absence. This situation was resolved. Her leave credits were restored, and she was not disciplined. Finally, there is no evidence that the tipped supply-holder and the two misplaced books was the result of discriminatory or retaliatory *animus*. None of these actions were materially adverse.

### C. Similarly situated employees

Bottoms presents no evidence that similarly-situated non-African Americans received more favorable treatment from Human Services with respect to all her claims. Without evidence, she cannot establish a *prima facie* case of disparate treatment. Runnels v. Armstrong World Indus., Inc., 105 F. Supp.2d 914, 920 (C.D. Ill. 2000); Patterson v. Omni Super Store/Dominick's Finer Foods, Inc., No. 97 C 7546, 1999 WL 116212, at *6 (N.D. Ill. Mar. 2, 1999).

## IV. Failure to Promote

To survive the motion for summary judgment on her failure to promote claim, Bottoms must ultimately show that Chicago-Read's reason for denying her the promotion was pretextual. Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). To do this, she must demonstrate a reasonable fact finder could infer Chicago-Read did not honestly believe its reason for denying her the promotion. Perdomo, 67 F.3d at 144; Anderson, 13 F.3d at 1124. Her insubordinate conduct disqualified her

from receiving the office associate promotion. She proffers no evidence Chicago-Read's reason for denying her the promotion was pretextual.

## V. Retaliation

To establish a *prima facie* case of retaliation, Bottoms must show that she engaged in protected expression; she suffered an adverse job action; and there is a causal link between her charge and the adverse action. Johnson v. University of Wis., 70 F.3d 469, 479 (7th Cir. 1995). She must ultimately prove Chicago-Read's reason for its actions was pretextual by showing that a reasonable fact finder could infer that Chicago-Read did not honestly believe the reason. *See* Walker v. Glickman, 241 F.3d 884 (7th Cir. 2001); Anderson, 13 F.3d at 1124. Her transfer to an unclean work area; receipt of the racial note; the locker incident with Targos; receipt of an unauthorized absence; and trashing of her work area do not constitute adverse job actions. Thus, her only actionable claim is failure to promote her to the office associate position.

Suffering an adverse job action soon after engaging in protected expression is sufficient to establish a *prima facie* case of retaliation. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1458 (7th Cir.1994). However, Bottoms applied for the position in April 1999, ten months after she filed her first EEOC charge. Without evidence linking her charge to the denial of her bid in November 1999, Bottoms fails to establish a reasonable inference of retaliation. *See* Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998) (no inference where adverse action more than five months after protected expression). Further, she offers no evidence that Chicago-Read did not honestly believe her insubordination disqualified her from the office associate position. Thus, the retaliation claims fail.

11

## CONCLUSION

The motion for summary judgment is granted.

ENTER:

*Suzanne B. Conlon* (signature)

Suzanne B. Conlon
United States District Judge

April 24, 2001